**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5056-18T3

GERARD RIENZI,

    Plaintiff-Appellant,

v.

VINCENT G. GIACOMAN,

    Defendant-Respondent,

and

CITY OF UNION CITY,
COUNTY OF HUDSON, and
STATE OF NEW JERSEY,

    Defendants.

_____

Argued October 7, 2020 – Decided  October 26, 2020

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4244-17.

Amy E. Lefkowitz argued the cause for appellant (Law Offices of Curt J. Geisler, LLC, attorneys; Curt J. Geisler, on the brief).

Douglas M. Barnett argued the cause for respondent (Gregory P. Helfrich & Associates, attorneys; Douglas M. Barnett, on the brief).

PER CURIAM

Plaintiff Gerard Rienzi appeals from a June 21, 2019 grant of summary judgment to defendant Vincent G. Giacoman. We affirm, substantially for the reasons set forth in Judge Joseph V. Isabella's well-reasoned opinion.

On November 19, 2015, while plaintiff was in Union City conducting an inspection of Giacoman's apartment building on behalf of his employer, defendant State of New Jersey, he fell on the sidewalk and sustained injuries. Plaintiff filed suit against Giacoman, as well as defendants City of Union City and County of Hudson. He alleged he suffered injuries due to a hole in the sidewalk adjacent to Giacoman's building. After his accident, the City of Union City repaired the sidewalk and the hole.

On appeal, plaintiff contends Giacoman was not entitled to summary judgment as a matter of law. He argues that since Giacoman's property is commercial, he had a duty to maintain the sidewalk. Alternatively, plaintiff argues the matter must be remanded to resolve factual issues regarding the nature of Giacoman's ownership and use of his property. We are not persuaded.

2

Giacoman's three-family apartment building is located on Bergenline Avenue in Union City (the property). The neighborhood surrounding the property is classified as commercial and consists of storefronts and apartment buildings, but his property is zoned residential. At the time of plaintiff's fall, Giacoman and his brothers resided in the first-floor apartment, while the other two apartments were rented to non-relatives. As Judge Isabella found, "no commercial entities have rented the property. Nor have any commercial entities ever been associated with it." Giacoman did not have anyone manage the property on his behalf.

Giacoman continuously lived at the property after he purchased it in 2012. According to his summary judgment certification, Giacoman's two tenants paid monthly rent of $1320 and $1450, respectively, but his brothers did not pay rent. Further, the record reflects Giacoman's monthly mortgage, taxes and insurance totaled $2550.58, and he incurred additional monthly expenses for sewer ($300), water ($80-100), pest control ($100), and gas and electric ($100). Additionally, after he bought the property, he purchased a new boiler for $7557 and paid $5000 for a new roof. When he was deposed prior to the summary judgment ruling, Giacoman testified the rental income he received "barely cover[ed]" his expenses at the property.

A-5056-18T3

Our Supreme Court has confirmed that residential property owners generally are not liable for sidewalk injuries. Luchejko v. City of Hoboken, 207 N.J. 191, 195 (2011) (citing Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 159 n.6 (1981)). Conversely, commercial property owners have a duty to maintain sidewalks that abut their property and are liable for injuries suffered as a result of their negligent failure to do so. See Stewart, 87 N.J. at 150. Thus, the relevant inquiry is whether Giacoman's property is commercial or residential.

In Grijalba v. Floro, 431 N.J. Super. 57 (App. Div. 2013), we considered the differences between residential and commercial properties and observed that residential property is

> "designed for people to live in" and "concerning or relating to residence," Residential, Oxford Dictionaries Online, http://oxforddictionaries.com/us (last visited Apr. 25, 2013); and "used as a residence or by residents," Merriam–Webster's Dictionary 1060 (11th ed. 2012). "Residence" has been defined as "the act or fact of dwelling in a place for some time," and "[t]he place where one lives," Merriam–Webster's Dictionary 1335 (11th ed. 2012); "[t]he act or fact of living in a given place for some time," and "[t]he place where one actually lives," Black's Law Dictionary 1335 (8th ed. 2004); and "the place in which one lives or resides." Hambright [ v. Yglesias], 200 N.J. Super. [392,] 395 n.1 [(App. Div. 1985)] . . . N.J.A.C. 13:45A-16.1A defines "[r]esidential or non-commercial property" as

A-5056-18T3

a structure used, <u>in whole or in substantial part,</u> as a home or place of residence by any natural person, whether or not a single or multi-unit structure, and that part of the lot or site on which it is situated and which is devoted to the residential use of the structure, and includes all appurtenant structures.

[<u>Grijalba</u>, 431 N.J. Super. at 67.]

On the other hand,

"[c]ommercial" has been defined as "concerned with or engaged in commerce" and "making or intended to make a profit," <u>Commercial, Oxford Dictionaries Online</u>, http://oxforddictionaries.com/us (last visited Apr. 25, 2013); and "occupied with or engaged in commerce work intended for commerce" and "viewed with regard to profit," <u>Merriam–Webster's Dictionary</u> 249 (11th ed. 2012). "Commerce is defined as business." <u>Hambright</u>, . . . 200 N.J. Super. at 395 n.1.

[<u>Id.</u> at 68.]

The <u>Grijalba</u> court implemented a four-factor test to aid trial courts in determining whether an apartment building consisting of three units should be considered commercial or residential, and identified them as follows:

(1) the nature of the ownership of the property, including whether the property is owned for investment or business purposes; (2) the predominant use of the property, including the amount of space occupied by the owner on a steady or temporary basis[,] to determine whether the property is utilized in whole or

in substantial part as a place of residence; (3) whether the property has the capacity to generate income, including a comparison between the carrying costs with the amount of rent charged to determine if the owner is realizing a profit; and (4) any other relevant factor when applying "commonly accepted definitions of 'commercial' and 'residential' property.'" Applying such a totality of the circumstances test, on a case-by-case fact-sensitive basis, where the parties have disputed the general nature of the ownership of the property and the use to which it is put, follows the Court's repeated approach for the last three decades of resolving "difficult cases . . . as they arise."

[Id. at 73-74 (citations omitted).]

Here, Judge Isabella applied the Grijalba factors, stating:

[T]he [c]ourt finds the property is residential. The [c]ourt applied the totality of the circumstances test as identified in Grijalba . . . . As to the nature of the ownership, when [d]efendant purchased the property, it was his intention to live there and rent out the other two units. Defendant's two brothers live with him in his unit, and do not pay rent. Defendant has continued to live at the residence since his purchase.

The predominant use of the property is used in whole as a place of residence. The other two units are rented to individuals, and no commercial entities have rented the property. Nor have any commercial entities ever been associated with the property.

The third factor questions whether the property has the capacity to generate income, and advises the [c]ourt to include a comparison between carrying costs with the amount of rent charged to determine if the owner is realizing a profit. Defendant's income related to the

A-5056-18T3

property is minimal. Defendant uses the rent from the two tenants and applies it to expenses such as the mortgage, repairs, renovations, and other regular expenses. Without applying the other tenant[s'] rents to mortgages or otherwise, living in Hudson County could be unaffordable.

Appellate courts review a trial court's grant of summary judgment de novo, applying the same standards as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citations omitted). Summary judgment is appropriate where the record establishes there is "no genuine issue as to any material fact challenged and that the moving party is entitled to judgment or order as a matter of law." R. 4:46-2(c). To determine whether genuine issues of material fact exist, the evidence is viewed in the light most favorable to the non-moving party. Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 256 (2018) (citations omitted).

Considering these principles, we discern no basis to set aside the grant of summary judgment. It was plaintiff's burden to establish the property was commercial in nature and used for investment purposes. He simply failed to meet that burden. Conversely, the record amply established Giacoman was entitled to sidewalk immunity because his property was used for residential purposes.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION